**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **TRACY FITZGERALD,**<br>**THOMAS GOULET,**<br>**DIANNE LAHAYE,**<br>**MAUREEN SALIBA,**<br>**MICHELLE DOUMANI,**<br>**PHILIP PERKINS,**<br><br>  **Plaintiffs,**<br><br>**v.**<br><br>**NORTHERN ESSEX COMMUNITY**<br>**COLLEGE,**<br><br>  **Defendant.** | Civil Action No.: |

**COMPLAINT AND JURY TRIAL DEMAND**

**I.  PARTIES**

1.  Plaintiff, Tracy Fitzgerald, (hereinafter, "Fitzgerald"), was employed full-time as a Payroll Director at Northern Essex Community College, (hereinafter, "NECC" or "Defendant").

2.  Plaintiff, Thomas Goulet, (hereinafter, "Goulet"), was employed full-time as the Custodial Supervisor at NECC.

3.  Plaintiff, Dianne Lahaye, (hereinafter, "Lahaye"), was employed full-time as an Administrative Assistant II at NECC.

4.  Plaintiff, Maureen Saliba, (hereinafter, "Saliba"), was employed full-time as a Senior Staff Assistant/Athletic Trainer at NECC.

1

5.   Plaintiff, Michelle Doumani, (hereinafter, "Doumani"), was employed full-time as an EDP Entry Operator IV at NECC.

6.   Plaintiff, Philip Perkins, (hereinafter, "Perkins"), was employed full-time as a Motor Equipment Mechanic at NECC.

7.   NECC is an accredited two-year institution of higher learning overseen by its President and a Board of Trustees appointed by the Governor of the Commonwealth of Massachusetts, with its main offices at 100 Elliott Street, Haverhill, Massachusetts 01830.

8.   NECC is an employer within the meaning of 42 U.S.C. Sec 2000e (b) and M.G.L. c 151B, Sec1(5).

9.   NECC intentionally and wrongly terminated all of the Plaintiffs' employment on January 25, 2022.

10. Each of the Plaintiffs filed timely charges with Massachusetts Commission Against Discrimination ("MCAD") and/or the United States Equal Employment Opportunity Commission ("EEOC").

11. The EEOC issued Plaintiffs their "Right-to-Sue" notices.

12. The Plaintiffs bring this lawsuit within ninety (90) days of receipt of their "Right-to-Sue" notice. All preconditions for filing this lawsuit have been performed or have occurred.

## II.  FACTS

13. Fitzgerald was fifty-four (54) years old and worked at NECC for over twenty-three (23) years when she was intentionally and wrongly terminated from NECC because of her age and her sincerely held religious beliefs.

2

14. Goulet was fifty-four (54) years old and worked at NECC for over twenty (20) years when he was intentionally and wrongly terminated from NECC because of his age and his sincerely held religious beliefs.

15. Lahaye was seventy (70) years old and worked at NECC for over sixteen (16) years when she was intentionally and wrongly terminated from NECC because of her age and her sincerely held religious beliefs.

16. Saliba was fifty-three (53) years old and worked at NECC for over fifteen (15) years when she was intentionally and wrongly terminated from NECC because of her age and her sincerely held religious beliefs.

17. Doumani was fifty-two (52) years old and worked at NECC for over twenty-three (23) years when she was intentionally and wrongly terminated from NECC because of her age and her sincerely held religious beliefs.

18. Perkins was forty (40) years old and worked at NECC for over fourteen (14) years when he was intentionally and wrongly terminated from NECC because of his age and his sincerely held religious beliefs.

19. Each of the Plaintiffs were very specific and articulated their sincerely held religious beliefs to the Defendant as well as MCAD and/or EEOC.

20. Federal law and Massachusetts law both prohibit employers from discriminating against their employees who are 40 years old and older based on their age.

21. As of June 15, 2021, the former Massachusetts Governor, Charles D. Baker, (hereinafter, "Baker"), terminated the "Covid-19" State of Emergency. As a matter of law and fact, **after June 15, 2021**, the Commonwealth of Massachusetts declared there was no longer any "Covid-19 Emergency" in existence.

22. The Plaintiffs allege that their age, coupled with NECC's unconstitutional Vaccine Policy, was a ruse to terminate their employment and prevent them from collecting their retirement benefits.

23. On September 20, 2021, the Plaintiffs received an email notifying them that "the Presidents of Massachusetts' fifteen (15) community colleges released a statement announcing that all students, faculty and staff at the state's community colleges, including NECC, would be required to be fully vaccinated by January 2022." This email notification did not include any guidance regarding Covid-19 vaccination.

24. On November 19, 2021, "following impact bargaining with the American Federation of State, County and Municipal Employees, (hereinafter, "AFSCME"), and the Massachusetts Community College Council, (hereinafter, "MCCC"), the presidents released a more detailed policy and timeline which requires all employees to provide **written proof of full vaccination status by January 3, 2022**, absent an approved reasonable accommodation."

25. NECC essentially implemented their own Mandatory Covid-19 Vaccine Policy, (hereinafter, the "Vaccine Policy"), five (5) months *after* Governor Baker terminated the "Covid-19" State of Emergency in Massachusetts.

26. On December 19, 2021, the Plaintiffs received an email from Dr. Lane Glenn, (hereinafter, "Dr. Glenn"), President of NECC. In that email, Dr. Glenn stated, "We are taking these steps for the health and well-being of everyone in our college."

27. The above statement by Dr. Glenn was six (6) months *after* Baker ended the "Covid-19" State of Emergency in Massachusetts and sixteen (16) days after the Holiday Party.

4

28. On December 3, 2021, Michael McCarthy, (hereinafter, "McCarthy"), NECC's Chief Financial Officer and Chief Operating Officer, held a Holiday Party for all NECC employees within the departments he supervised.

29. This Holiday celebration was held at 'The Barking Dog Ale House' in Haverhill, Massachusetts.

30. Approximately fifty (50) to sixty (60) NECC employees attended the Holiday Party.

31. NECC employees were sitting together less than six (6) feet apart and were **not** wearing face masks.

32. NECC employees who were already injected with a Covid-19 vaccination were in close proximity with those NECC employees who were not injected with a Covid-19 vaccination.

33. Attendees at this party included the NECC Human Resources Executive Director, Patricia Gauron, (hereinafter, "Gauron"), who sat at the same table as Fitzgerald, despite knowing that she, Fitzgerald, was "unvaccinated". It is noteworthy that Gauron was on the NECC Committee that was responsible for approving or denying the Plaintiffs' Religious Exemption and Accommodation requests.

34. If the spread and transmission of Covid-19 from only the ***unvaccinated*** was still a threat on December 3, 2021, common sense dictates that ***none*** of the leaders of NECC would have socialized closely with unvaccinated people, period.

35. There had never been an Employee Vaccine Mandate or Vaccine Policy in existence at NECC prior to the Covid-19 Vaccine Policy.

**Plaintiff Fitzgerald**

36. Fitzgerald was not a member of either the AFSCME or the MCCC collective bargaining unions.

37. Since attending college, Fitzgerald has not taken *any* vaccinations due to her sincerely held religious beliefs.

38. Fitzgerald's religious beliefs are based on her God-given natural immunity, as opposed to man-made, artificial immunity derived from Covid-19 vaccines.

39. On September 20, 2021, Fitzgerald received an email with a statement issued by NECC announcing that "the students, faculty and staff needed to be fully vaccinated with the Covid-19 injection by January 2022."

40. On October 20, 2021, Fitzgerald conversed with Gauron, informing her that she, Fitzgerald, was not vaccinated against Covid-19.

41. During that conversation, Gauron provided no guidance to Fitzgerald other than "Dr. Glenn was not going to accommodate anyone working from home."

42. Fitzgerald went on to ask Gauron during that October 20, 2021, what "accommodations they would allow" and Gauron replied, "She didn't know".

43. Gauron ended that conversation with "I am going to hate to lose you", referring to Fitzgerald.

44. On December 3, 2021, Fitzgerald attended the NECC Holiday Party unmasked, and sat at Gauron's table, despite Gauron knowing that she, Fitzgerald, was unvaccinated.

45. On December 8, 2021, Fitzgerald submitted her Religious Exemption and Accommodation form to Gauron.

6

46. In her request for a Religious Exemption and Accommodation, Fitzgerald explained that "I am a Christian and I believe the Bible is the Word of God and reveals His Will for all human beings (1 Timothy 3:16)."

47. Fitzgerald further explained that "All of my religious beliefs are based on the Bible." She added that, "The Bible teaches that God created human beings in his image (Genesis 1:26)."

48. Fitzgerald emphasized that, "I live by these beliefs that is why I am asking for a religious exemption from the Covid-19 vaccines."

49. Between December 21, 2021 and January 18, 2022, Fitzgerald exchanged emails with Gauron who requested that she, Fitzgerald, provide more information in order to "establish her eligibility" for a Religious Exemption and Accommodation.

50. Gauron's complaint was that Fitzgerald's Religious Exemption and Accommodation request was "secular" in nature.

51. This process caused Fitzgerald an enormous amount of stress, anxiety, sleepless nights, and sadness during a time when Christians are typically joyous as they prepare for the celebration of the birth of Jesus Christ on December 25th.

52. To reiterate, Fitzgerald was fifty-four (54) years old at the time of her intentional and wrongful termination from NECC and had **NOT** taken *any* vaccinations since she was in college, over thirty (30) years ago due to her sincerely held religious beliefs.

53. Fitzgerald, a single mother, was forced to choose between her sincerely held Christian religious beliefs and her family's livelihood. As stated in her request for a

Religious Exemption and Accommodation, "I choose to live my life in faith rather than fear."

54. On January 3, Fitzgerald was placed on unpaid administrative leave by NECC.

55. On January 21, 2022, Fitzgerald received an official termination letter from NECC.

56. On January 25, 2022, Fitzgerald was officially terminated by NECC.

57. As a result of her termination, Fitzgerald was forced to sell her family home in 2022, due to her intentional and wrongful termination at the hands of NECC.

**Plaintiff Goulet**

58. Goulet became a Christian over twenty (20) years ago.

59. Despite his official job title, Custodial Supervisor, Goulet did not supervise any Custodians, rather his job title was given to him by NECC as a means to increase his salary and responsibilities at NECC.

60. Goulet's actual job *function* was that of Store Keeper, his previous position at NECC.

61. Goulet's duties in this role included shipping, receiving and delivery, which all could have been performed with very limited contact with other NECC employees and students.

62. In March 2020, Goulet was deemed "an essential employee" by NECC leadership who demanded that he be on the front line to keep the college functioning properly.

63. Since March of 2020 and until his intentional and wrongful termination from NECC, Goulet had **NOT** been vaccinated for Covid-19.

64. During this same time period, Goulet did **NOT** present an "undue hardship" for NECC, nor was he considered a "threat to the health and safety" of other NECC employees.

65. On October 1, 2021, Goulet submitted his Religious Exemption and Accommodation request letter to Gauron.

66. In his letter, Goulet expressed that he takes "no vaccines" due to his sincerely held religious beliefs and has not received *any* vaccines since he has been a Christian, which was over twenty (20) years ago.

67. Furthermore, Goulet explained that "his body is a temple of the Holy Spirit".

68. At that time, Goulet proactively offered the following Accommodations to Gauron: to mask when not alone, to perform regular Covid-19 saliva tests, to perform a self-diagnostic each morning before heading to work, to remain at home when feeling unwell, and to perform all deliveries on the NECC campus prior to when other NECC employees arrive at work, between 8:00 A.M. and 9:00 A.M.

69. The above set-forth Accommodations provided by Goulet to Gauron were the same practices he adhered to on the NECC campus during the entire Covid-19 pandemic when he was deemed an "essential NECC employee".

70. On December 3, 2021, Goulet attended the same Holiday Party where Gauron, other members of the NECC Human Resources Department, McCarthy, NECC Comptroller, Anthony DeGregorio, other members of the NECC Covid-19 Task Force and fifty (50) to sixty (60), unmasked NECC employees socialized closely for over two (2) hours at a Haverhill, Massachusetts restaurant.

71. There were **NO** safety protocols put in place for this Holiday Party.  No Covid-19 testing. No required face masks. No social distancing required.

72. At least three (3) of the attendees at the Dec 3, 2021 Holiday Party were known by Gauron to be **unvaccinated**. Somehow, these three (3) attendees were not an "undue hardship" nor were they a threat "to the health and safety" of the other NECC employees in attendance at this event.

73. Somehow, at least three (3) unvaccinated NECC employees were able to be *reasonably accommodated* at this Holiday Party that lasted over two (2) hours. Yet, Goulet could **not** be reasonably accommodated on the NECC campus when his interactions with other NECC employees last less than one (1) to two (2) minutes.

74. On Wednesday, December 15, 2023, Goulet met virtually via a Zoom meeting with Gauron and Covid-19 Accommodations Assistant, Patricia A. Bradford, (hereinafter, "Bradford"), for what was labeled an "interactive process".

75. Of note, Bradford had previously retired from NECC sometime between 2020 and 2021 from the Human Resources Department.  She was reinstated specifically for this new position.

76. On that same day, Goulet sent a "recap" email to both Gauron and Bradford, thanking them for the meeting.

77. In this email, Goulet reiterated what was discussed in the meeting: "My personal religious convictions are to not take any vaccines, not just Covid-19 vaccine."

78. On December 17, 2021, Goulet was notified via a letter sent to him by Gauron that "your request lacks satisfactory information to establish your eligibility to receive a reasonable accommodation."

10

79. In that December 17, 2021 letter, Gauron stated that "Once the College receives a reasonable accommodation, it will then determine if the accommodation you requested is reasonable, absent direct threat, and/or undue hardship."

80. During this time, Goulet experienced shock, anxiety, nervousness, sadness, disappointment, sleeplessness, headaches, nausea, loss of appetite, and severe stress in his personal relationship.

81. On December 22, 2021, Goulet was again notified via a letter sent by Gauron that his request for a Religious Exemption and Accommodation was denied.

82. In this denial letter from Gauron, sent to Goulet nineteen (19) days *after* the December 3, 2021 Holiday Party, Gauron informed Goulet that you have provided "no alternative effective accommodation identified".

83. On January 4, 2022, Goulet was placed on unpaid leave administrative by NECC.

84. On January 21, 2022, Goulet received an official termination letter from NECC.

85. On January 25, 2022, Goulet was officially terminated from NECC, just ten (10) years from his planned retirement.

### Plaintiff Lahaye

86. Lahaye was a member of the AFSCME collective bargaining union.

87. In 1989, Lahaye "accepted Jesus Christ as her Lord and Savior."

88. Since 1989, Lahaye has been a member of the Salem Bible Church located in Salem, New Hampshire.

89. From March 2020 through August 2021, Lahaye performed her job one hundred percent (100%) remotely from home.

90. On October 6, 2021, Lahaye submitted her Religious Exemption letter to Gauron.

91. Per the above letter, Lahaye explained to Gauron that, "she has been under the teachings of God's word", and that "We are told in 1 Corinthians 6:19 that our bodies are the temple of God", "Do you know that your body is the temple of the Holy Spirit who is in you, whom you have from God?"

92. Lahaye's reliance was, and is currently, on "natural immunity" rather than man-made, mRNA.

93. On November 2, 2021, Lahaye's blood test proved that she has natural, God-given, antibodies to Covid-19.

94. On November 19, 2021, Lahaye submitted the results of her Covid-19 antibody test and an Accommodation request to Gauron.

95. On December 17, 2021, Lahaye received notification of her denial for her Religious Exemption and Accommodation request from Gauron stating that her request was "secular in nature rather than based on a religious belief."

96. During this time of religious persecution, Lahaye experienced extreme stress, anxiety, headaches, sleeplessness, intestinal issues, disbelief and internal angst.

97. On December 21, 2021, Lahaye submitted another Religious Exemption and Accommodation request to Gauron further explaining her sincerely held religious beliefs.

98. In this letter, Lahaye expounded on her sincerely held religious beliefs emphasizing the use of "aborted fetal cells lines" in the development of Covid-19 vaccines, and how this "violates my faith, beliefs and biblical values."

99. On January 12, 2022, Lahaye received a letter from Gauron denying her a reasonable accommodation to Lahaye's request for a Religious Exemption to the Covid-19 vaccine.

100. In the above letter, Gauron informed Lahaye that her request of "working on campus unvaccinated (masked and being tested) is not reasonable and would pose an undue hardship on the College."

101. Gauron's statement above was followed by, "The safety measures you propose, would not mitigate the health and safety concerns of the COVID pandemic for the students and employees."

102. Firstly, Gauron's statements fly in the face of the fact that Governor Baker terminated the "Covid-19" State of Emergency on June 15, 2021.

103. Furthermore, Gauron did not seem concerned about the "health and safety of employees" when she attended the December 3, 2021 Holiday Party where fifty (50) to sixty (60) NECC employees socialized in close proximity while unmasked, and whose *unvaccinated* status **WAS** known to Gauron herself.

104. Surely, accommodating Lahaye, who had already worked remotely during the pandemic for over a year and a half, and who was so close to retirement, could not have been much of a hardship to NECC.

105. Per page 3 of Lahaye's MCAD Position Statement dated August 11, 2022 and signed by Gauron, "Covid-19 is a highly contagious and, at times, fatal respiratory disease" and "spreads from person to person via respiratory droplets when an infected person coughs or sneezes."

106. Again, if Gauron was so concerned about this "highly contagious and, at times, fatal respiratory disease", why did she attend the December 3, 2021 Holiday Party with between fifty (50) and sixty (60) *unvaccinated and unmasked*, NECC employees?

107. Per page 11 of Lahaye's MCAD Position Statement dated August 11, 2022, and signed by Gauron, "The college received 25 total employee requests for reasonable accommodation, 14 based on religion, 1 medical, and 10 requests for medical delay in compliance, related to the Employee Vaccine Policy. Three religious accommodation requests were approved, nine were denied, and two requests were withdrawn. The one medical request was approved and 10 out of 10 requests for delayed compliance for various reasons were approved."

108. On January 3, 2022, Lahaye was placed on unpaid administrative leave by NECC.

109. On January 21, 2022, Lahaye received an official termination from NECC.

110. On January 25, 2022, Lahaye was officially terminated from NECC.

## **Plaintiff Saliba**

111. Saliba was a member of the MCCC collective bargaining union.

112. On October 6, 2021, Saliba emailed Gauron seeking guidance regarding the submission of a Religious Exemption and Accommodation. There was no response from Gauron.

113. On November 11, 2021, Saliba again emailed Gauron seeking guidance for her Religious Exemption and Accommodation.

114. On November 19, 2021, Saliba received an NECC-wide email, which included the Vaccine Policy and Religious Exemption and Accommodation form.

14

115. On November 29, 2021, Saliba submitted her Religious Exemption and Accommodation letter to Gauron.

116. On December 15, 2021, Saliba participated in an interactive process attended by Gauron and Bradford.

117. During Saliba's interactive process, both Gauron and Bradford acknowledged Saliba's sincerely held religious beliefs.

118. During Saliba's interactive process, Gauron and Bradford denied her requested Accommodations of continuing to self-screen for Covid-19 and to remain at home if experiencing symptoms of same.

119. Recall Gauron's attendance at the December 3, 2021, Holiday Party with other NECC leadership and fifty (50) to sixty (60) unmasked NECC employees, some of whom were unvaccinated.

120. During the time between the announcement of NECC's Vaccine Policy and Saliba's official termination, she suffered insomnia, tachycardia, anxiety, deep sadness, indigestion, along with familial discord.

121. On December 17, 2021, Saliba received an email from Gauron stating that her, Saliba's, Accommodation request was not complete.

122. On December 23, 2021, Saliba received another letter from Gauron stating that "although eligible for a reasonable accommodation" that her "role", Saliba's, "creates an inability to mitigate direct threat to the health and safety of individuals within the Northern Essex Community College."

123. Again, this letter from Gauron to Saliba was twenty (20) days after the December 3, 2021 Holiday Party attended by Gauron.  How did Gauron know that anyone

who was unvaccinated was or would be a "threat to health and safety" more than six

(6) months after the termination of the Massachusetts "Covid-19" State of

Emergency?

124. On January 4, 2022, Saliba was placed on unpaid administrative leave by NECC.

125. On January 21, 2022, Saliba received an official termination letter from NECC.

126. On January 25, 2022, NECC officially terminated Saliba.

127. At the time of Saliba's termination from NECC, she was merely twelve (12) years

from the retirement date she had set for herself, which was June 30, 2034.

**Plaintiff Doumani**

128. Doumani is a devout Christian.

129. Doumani has not received ***any*** vaccinations as an adult due to her sincerely held

religious beliefs.

130. Doumani's children have not been vaccinated due to her and her husband's

sincerely held religious beliefs.

131. Doumani was a member of the AFSCME collective bargaining union.

132. Doumani's position as an EDP Entry Operator IV at NECC is a job that **can** be

performed remotely.

133. During the Covid-19 pandemic, Doumani performed her job on campus for almost

two (2) years, at times, working remotely from home.

134. While working from home, NECC arranged for students' calls and inquiries to be

routed to her home office.

135. While working on NECC's campus, Doumani was **not** vaccinated for Covid-19

and she rarely, if ever, wore a face mask.

16

136. On December 15, 2021, Doumani submitted her Religious Exemption and Accommodation letter to Gauron.

137. In that letter, Doumani explained that she has a sincerely held religious belief "Abortion is a sin and contrary to the teachings of the Christian Church" and "A Christian may invoke Church teaching to refuse a vaccine developed or produced using abortion-derived cell lines."

138. It **IS** common knowledge that aborted, fetal cell lines **ARE** used in the development and production of vaccines.

139. Additionally, Doumani included in the above Religious Exemption and Accommodation letter "the Christian Church instructs that following one's conscience is following Christ himself."

140. During this time of religious persecution for her sincerely held religious beliefs, Doumani experienced extreme stress, anxiety, profound sadness, sleeplessness, headaches, nausea, bouts of crying, and family discord.

141. On December 28, 2021, Gauron denied Doumani's request for a Religious Exemption and Accommodation stating that "your request does not include satisfactory information to support your eligibility for a reasonable accommodation."

142. On January 4, 2022, Doumani was placed on unpaid administrative leave by NECC.

143. On January 21, 2022, Doumani received an official termination letter from NECC.

144. On January 25, 2022, NECC officially terminated Doumani.

17

145. Doumani is now working two (2) jobs to support her family, in addition to paying higher health insurance premiums.

146. Doumani was just three (3) years shy of when she **could** have retired from NECC.

### Plaintiff Perkins

147. Perkins was a member of the AFSCME collective bargaining union.

148. Phil has not taken any vaccines since he was eighteen (18) years old.

149. Phil has been an avid Christian and follower of Christ for fifteen (15) years.

150. Perkins performed his job with virtually zero interaction with other NECC employees and students.

151. In March 2020, Perkins was deemed "an essential employee" by NECC and demanded that he be on the front line to keep the college functioning properly.

152. Since March of 2020 and until his intentional and wrongful termination from NECC, Perkins had **NOT** been vaccinated for Covid-19.

153. He was Accommodated by wearing a face mask and social distancing on the rare occasion that he might come into contact with another NECC employee or student.

154. During this same time, Perkins did **NOT** present an "undue hardship" for NECC, nor was he considered a "threat to the health and safety" of other NECC employees.

155. On October 15, 2021, Perkins emailed a Religious Exemption and Accommodation request statement to Gauron explaining his "passionately held religious beliefs" and that he was "a follower of Christ".

156. In this email to Gauron, Perkins suggested that in lieu of taking the Covid-19 vaccination, "I would be willing to be tested weekly and screened on a daily basis, as well as wear a mask indoors."

157. On or about November 22, 2021, Perkins submitted his Religious Exemption and Accommodation form to Gauron.

158. In the above letter to Gauron, Perkins reiterated that "his body is the temple of the Holy Spirit which was given to him by God."

159. In that same Religious Exemption and request for Accommodation letter, Perkins added that he "avoids vaccines, some over-the-counter medications" preferring to use "natural remedies and vitamins."

160. During this time, Phil experienced stress, anxiety, sleeplessness, nausea, headaches, deep sadness, and immense family discord, resulting in periods of arguing.  In fact, Perkins' marriage almost ended in divorce during this time.

161. Perkins exchanged many emails with Gauron during this time, in an attempt to protect his livelihood, all while adhering to his sincerely held religious beliefs and doctrine.

162. On January 4, Perkins was placed on unpaid administrative leave by NECC.

163. On January 5, 2022, Perkins received a letter from Gauron informing him that the church he attends, Rock Church, "will not issue a statement of religious exemption for employment purposes."

164. Perkins was summarily denied his Religious Exemption and Accommodation request.

165. This persecutorial behavior by Gauron exemplifies the religious persecution and targeting felt and experienced by Perkins and the five (5) other Plaintiffs at the hands of the NECC leadership.

19

166. On January 10, 2022, Perkins' Pastor emailed Gauron directly reiterating his, Perkins, sincerely held religious beliefs.

167. On January 21, 2022, Perkins received a termination letter from NECC.

168. On January 25, 2022, Perkins was officially terminated from NECC.

169. Perkins' termination placed an inordinate amount of stress on his family. His wife has been forced to work overtime to compensate for the loss of Perkins' employment.

170. All of this occurred around the Christmas season, a very important celebration for Christians.

171. Historically, believers in Jesus Christ have not been expected to write their own doctrinal statements. Furthermore, religious belief is for many people is intensely private, and it is ridiculed by many in our society.

172. NECC, and specifically Gauron, focused on mocking the Plaintiffs' sincerely held religious beliefs in her letters to them during this process.

173. Gauron made mention in every one of these letters that "You have not provided information to support that the Bible specifically prohibits or prevents vaccination and these passages do not explain why your religious beliefs make you unable to be vaccinated."

174. The above statement and similar ones made by Gauron to the Plaintiffs regarding their sincerely held religious beliefs during this process rose to a level of extraordinary religious persecution unheard of in modern times.

175. This religious persecution by Gauron put an inordinate amount of pain, stress, anxiety, shame, humiliation, and fear into the lives of the Plaintiffs.

176. Despite the stress and pressure put on the Plaintiffs by NECC, they held firm and steadfast to their sincerely held religious beliefs.

177. The Plaintiffs were all ***legally entitled to a Religious Exemption and Accommodation***.

178. The Plaintiffs submitted their Religious Exemptions and Accommodation requests due to their sincerely held religious beliefs.

179. The Plaintiffs offered Accommodations to NECC in lieu of receiving the Covid-19 vaccination that they would wear a face mask and submit to Covid-19 testing.  This was summarily denied by NECC.

180. NECC should have and could have Accommodated the Plaintiffs.

181. Instead, the Plaintiffs were denied their request for a Religious Exemption and Accommodation because of their sincerely held religious beliefs.

182. The Plaintiffs were all older, seasoned, dedicated, long-term, and loyal employees, who had plans to retire from NECC.

183. The Plaintiffs valued and enjoyed their work at NECC.

184. The Plaintiffs were intentionally and wrongly terminated from NECC.

185. This left the Plaintiffs feeling violated and discriminated against because of their age and because they asserted their sincerely held religious beliefs.

186. The Plaintiffs suffered damages as a result of NECC's actions including, but not limited to, lost wages, lost benefits, costs related to survival without income from work with Defendant as well as emotional stress to themselves and their families.

187. Upon information and belief, Gauron is known to have said during a February 3, 2022, meeting with AFSCME Representative, Michael Fiorentino, "We are looking to eliminate unvaccinated employees from campus."

188. Following an announcement by the Food and Drug Administration (hereinafter, "FDA") on August 2, 2021, claiming that vaccines were ninety-one percent (91%) effective in preventing Covid-19 (Pfizer), it became immediately clear that was not true.

189. Illustrating by example are the following list of visible persons that became infected by Covid-19 despite having been injected with a Covid-19 vaccine along with the date their infection was announced:

| | |
|---|---|
| 08-19-2021 | U.S. Senator John Hickenlooper |
| | U.S. Senator Angus King |
| | U.S. Senator Roger Wicker |
| 10-19-2021 | Dept Homeland Security Secretary Alejandro Mayorkas |
| 12-19-2021 | U.S. Senator Elizabeth Warren |
| 01-02-2022 | Dept of Justice Secretary Lloyd Austin |
| 03-13-2022 | U.S. President Barack Obama |
| 03-31-2022 | CIA Director William Burns |
| 04-05-2022 | U.S. Attorney General Merrick Garland |
| 04-07-2022 | U.S. House Speaker Nancy Pelosi |
| 04-09-2022 | U.S. Dept of Agriculture Secretary Tim Vilsack |
| 04-26-2022 | U.S. Vice-President Kamala Harris |
| 05-04-2022 | U.S. Secretary of State Anthony Blinken |

22

| | |
|---|---|
| 06-01-2022 | U.S. Labor Secretary Marty Walsh |
| 06-15-2022 | Dr. Anthony Fauci |
| 06-2022 | U.S. Senator Wicker for 3rd time (02-2022) |
| 07-10-2022 | U.S. Senate Majority Leader Charles Schumer |
| 07-21-2022 | U.S. President Joseph Biden |
| 10-22-2022 | CDC Director Rochelle Walensky |

190. Public Health Officials now acknowledge the fallacy of claims of protection afforded **by vaccines against Covid-19**.

   a. **Dr. Deborah Birx:** (Former White House Coronavirus Response Coordinator): "I knew these vaccines were not going to protect against infection and I think we overplayed the vaccines". **https://youtu.be/8aYqTIg1A**

   b. **Dr. Anthony Fauci**: "We know that people get infected and then get reinfected and people get vaccinated, and they get infected. So, immunity isn't measured in decades or lifetimes. It's measured in several months".

   **https://www.marketwatch.com/articles/Anthony-fauci-covid-19-biden-immunity-51658437525?shtied=nf-rss**

191. As of August 2020, the Centers for Disease Control and Prevention (hereinafter, "CDC") guidance on Covid-19 protection changed to eliminate differentiation based on whether a person received vaccination and now concede that so-called Covid-19 vaccines do not prevent those injected with same from contracting, suffering and/or spreading the Covid-19 disease.

23

192. The majority of people now hospitalized for Covid-19 related issues have received vaccinations and caught the Covid-19 virus anyway.

193. NECC's "Vaccine Policy" was based on false and deceptive claims that the vaccine was required to prevent employees from contracting the virus and spreading it to others, all of which was known by them.

194. Increasingly, it is becoming clear that Covid-19 vaccines did not afford the protection to the person injected or those they came into contact with and, in fact, have both short and long-term adverse effects on the injected person.

195. NECC terminated the Plaintiffs for resisting being injected due to their sincerely held religious beliefs and Defendant refused Accommodations to them by use of masks and periodic testing, stating same to be inferior to the vaccine.

196. NECC's instant degradation of masks and periodic testing by labeling them as "inferior" and unacceptable accommodation, along with Defendant's unrealistic reliance on experimental vaccines, place Defendant's historical position in question and now expose serious liberties taken by Defendant with the lives and well-being of the Plaintiffs, their families, and their contacts.

197. The Plaintiffs suffered financially, emotionally, psychologically, and lost reputation, as Defendant wrongly terminated them and claimed that they chose to voluntarily terminate their employment.

24

## CLAIMS FOR RELIEF

## COUNT I
## VIOLATION OF M.G.L. CHAPTER 151, AGE AND RELIGIOUS DISCRIMINATION AND VIOLATION OF TITLE VII

198. The Plaintiffs re-allege the foregoing Paragraphs 1-197 as if set forth again here.

199. Each of the Plaintiffs were very specific and articulated their sincerely held religious beliefs.

200. The Plaintiffs at all relevant times were engaged in protected activity under M.G.L. Chapter 151 and 42 USC § 2000e *et seq.*

201. NECC wrongly, intentionally, arbitrarily, and capriciously denied the Plaintiffs' Religious Exemption ***and*** Accommodation from having to inject themselves with the Covid-19 vaccine due to their age and their sincerely held religious beliefs.

202. NECC retaliated against the Plaintiffs because they refused to be injected with the Covid-19 vaccine because of their sincerely held religious beliefs.

203. NECC at all times knew, or should have known, that the Covid-19 vaccine did not prevent contracting nor spreading of the disease.

## COUNT II
## VIOLATION OF THE UNITED STATES CONSTITUTIONAL EQUAL PROTECTION AND TREATMENT RIGHTS

204. The Plaintiffs re-allege the foregoing Paragraphs 1-203 as if set forth again here.

205. The actions of NECC denied the Plaintiffs their right to Equal Protection and Equal Treatment as guaranteed to them by the United States Constitution.

206. Pursuant to the Fourteenth Amendment to the United States Constitution, the Plaintiffs have the right to the Equal Protection and Due Process of Laws.

25

207. The Plaintiffs have the right to be treated equally, the same and fairly as their co-workers who elected to receive the Covid-19 vaccine.

208. The Plaintiffs were not treated the same as other employees who opted to receive the Covid-19 vaccine and who did not have sincerely held religious beliefs.

209. The Plaintiffs were wrongly and intentionally terminated from their employment.

210. NECC at all times knew, or should have known, that the Covid-19 vaccine did not prevent contracting nor spreading of the disease.

## COUNT III
## VIOLATION OF UNITED STATES CONSTITUTIONAL SUBSTANTIVE AND PROCEDURAL DUE PROCESS RIGHTS

211. The Plaintiffs re-allege the foregoing Paragraphs 1-210 as if set forth again here.

212. The actions of NECC denied Plaintiffs their right to Due Process of Law as guaranteed to them by the United States Constitution.

213. The Plaintiffs have the right and protected interest under the First, Fourth and Fourteenth Amendment to the United States Constitution and Articles IV, X, XX, XXI, XXIX, and XXX of the Massachusetts Declaration of Rights to be free from the invasion of bodily integrity and to be free from unwanted medical intervention.

214. Because of these rights enjoyed by the Plaintiffs directly under both the United States Constitution and the Massachusetts Declaration of Rights as mentioned above, their substantive due process rights were denied when NECC mandated the Covid-19 vaccine upon the Plaintiffs, refused to honor their sincerely held religious beliefs and grant them a Religious Exemption *and* Accommodation from said vaccine and intentionally and wrongfully terminated them from their employment with retaliatory animus.

26

215. Because of NECC's action and inactions as aforementioned, the Plaintiffs' procedural due process rights were summarily denied and violated.

216. The Plaintiffs have a Constitutionally protected procedural due process right to Fair and Equal Treatment by NECC in considering their sincerely held religious beliefs and accommodating said beliefs; in these cases, by allowing the Plaintiffs to continue working but wearing a face mask and taking Covid-19 tests when physically at NECC work premises, which leading authorities agreed were effective measures in preventing the spread of the disease.

217. NECC at all times knew, or should have known, that the Covid-19 vaccines did not prevent contracting nor spreading of the disease.

**WHEREFORE, THE PLAINTIFFS PRAY THAT THIS HONORABLE COURT:**

Enter Judgment against NECC, finding that their conduct was knowingly and intentionally in bad faith, with knowledge or reason to know that their acts violated the Plaintiffs' Constitutional rights, and cause substantial hardships to the Plaintiffs, and against public policy and Federal law, for damages as follows:

A. A declaration that the Plaintiffs' constitutional rights were violated and an order requiring just, proper, and equitable relief.

B. A finding for the Plaintiffs that each Claim and Count set forth herein and an order for an amount to be determined at the trial of this matter.

C. Compensatory damages in the amount of Two Million Dollars ("$2,000,000.00") each.

D. Punitive damages in the amount of One Million Dollars ("$1,000,000.00") each.

E. Award reasonable attorneys' fees and costs of this action to the Plaintiffs.

F.  Such other and further relief that this Honorable Court finds meet, just, proper, and

    equitable.

**<u>THE PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES AND COUNTS.</u>**

                                  Respectfully submitted,
                                  The Plaintiffs,
                                  By their attorney,

DATED: November 3, 2023

                                  *<u>/s/ Richard C. Chambers, Jr., Esq.</u>*
                                  Richard C. Chambers, Jr., Esq.
                                  BBO#: 651251
                                  Chambers Law Office
                                  220 Broadway, Suite 404
                                  Lynnfield, MA 01940
                                  Office: (781) 581-2031
                                  Cell: (781) 363-1773
                                  Fax: (781) 581-8449
                                  Email: Richard@chamberslawoffice.com